JUDGE CASTEL

13 CV 2541

Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson (*pro hac vice* motion forthcoming)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

C.K. Lee
Anne Seelig
Shin Hahn
**LEE LITIGATION GROUP, PLLC**
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1188
Facsimile: (212) 465-1...

RECEIVED
APR 16 2013
U.S.D.C. S.D.N.Y.
CASHIERS

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANGEL ORTIZ, ORED TRUJILLO, ANTONIO FUENTES, and ISAAC BARRETO on behalf of themselves and others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**CHOP'T CREATIVE SALAD COMPANY LLC, COLIN MCCABE, TONY SHURE, and NICHOLAS MARSH,**<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Angel Ortiz, Ored Trujillo, Antonio Fuentes, and Isaac Barreto,[1] individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are delivery workers at Chop't Creative Salad Company LLC ("Chop't") restaurants in New York City.

2.      Defendants Colin McCabe ("McCabe"), Tony Shure ("Shure"), and Nicholas Marsh ("Marsh") own nineteen Chop't restaurants, including ten Chop't restaurants in New York City[2] and nine Chop't restaurants in Washington, D.C.

---

[1]      Defendants' records use a different spelling for Isaac Barreto, which is "Isacc Barreto."
[2]      The ten Chop't location in New York are: Chop't Financial District, Chop't Union

3.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

4.      Plaintiffs also bring this action on behalf of themselves and similarly situated current and former delivery workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## SUMMARY OF CLAIMS

5.      Defendants paid Plaintiffs and other delivery workers sub-minimum hourly wages, purporting to take a "tip credit" under the FLSA or the NYLL.

6.      Defendants were not allowed to take a "tip credit" because Defendants failed to meet the strict requirements that would allow them to do so.

7.      Defendants consistently required delivery workers to perform general food preparations, dishwashing, maintenance work, and/or other non-tipped work ("side work") for two hours or more and more than twenty percent of their time at work.

8.      Defendants also failed to pay delivery workers overtime pay, off the clock pay, call-in pay, and spread of hours pay, and failed to provide proper wage statements and wage notices to Plaintiffs and other similarly situated employees.

---

Square, Chop't Flatiron, Chop't 40th/Park, Chop't Times Square (Broadway), Chop't Midtown West (51st), Chop't Midtown East (52nd), Chop't Midtown East (56th), Chop't Midtown West (W 56th), and Chop't Rye Ridge.

9.      Defendants made unlawful deductions from Plaintiffs and other similarly situated employees' wages, including the cost of purchasing and maintaining their bicycles and other equipment required to perform their jobs.

## JURISDICTION AND VENUE

10.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA.

11.     This Court has supplemental jurisdiction over the NYLL claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.     At least one Defendant resides in New York.

13.     At least one Defendant is subject to personal jurisdiction in New York.

14.     Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**Plaintiffs**

**Angel Ortiz**

15.     Angel Ortiz ("Ortiz") is an adult individual who is a resident of New York, NY.

16.     Ortiz was employed by Defendants as a delivery worker from approximately February 2005 to approximately February 2008 and from approximately August 2009 to approximately August 2010 at the 60 East 56th Street Chop't Location in New York City; and from approximately May 2011 to approximately August 2012 at the 1460 Broadway Chop't location in New York City.

3

17.    Defendants paid Ortiz an hourly rate of $4.75 per hour.

18.    Ortiz typically worked 6.5 hours per day, five days a week.

19.    At all times, Defendants required Ortiz to spend three or more hours per day performing non-tipped work, such as cleaning and preparing food.

20.    Although Ortiz should have been paid as a non-tipped employee, Defendants paid him an hourly rate below the minimum wage.

21.    Starting in or around March 2012, Defendants periodically designated two or three hours per week worked by Ortiz as non-tipped work and paid him $8.00 per hour.

22.    However, Defendants never paid Ortiz for all of the non-tipped work he performed.  For example, for the week of June 24, 2012, Defendants paid Ortiz $8.00 an hour for 2.9 hours and $4.75 an hour for 22.16 hours.  Ortiz, however, performed side work for more than 2.9 hours that week.

23.    In order to perform his duties for Defendants, Ortiz was required to purchase a bicycle, which cost approximately $260.

24.    Ortiz spent approximately $50 to repair and to maintain the bicycle, including fixing the brakes.

25.    Ortiz is a covered employee within the meaning of the FLSA and the NYLL.

**Ored Trujillo**

26.    Ored Trujillo ("Trujillo") is an adult individual who is a resident of Queens, NY.

27.    Trujillo has been employed by Defendants as a delivery worker from approximately October 2010 through the present at the 1460 Broadway Chop't location in New York City.

28.     Defendants paid Trujillo an hourly rate of $4.75 per hour at the beginning of his employment until August 2011.

29.     Defendants paid Trujillo an hourly rate of $5.00 per hour from approximately August 2011 through approximately January 2013.

30.     Beginning in January 2013, Defendants started paying Trujillo an hourly rate of $7.25 per hour.

31.     Trujillo typically works seven hours per day, six days a week.

32.     At all times, Defendants required Trujillo to spend three or more hours per day performing non-tipped work, such as cleaning and preparing food.

33.     Although Trujillo should have been paid as a non-tipped employee, Defendants paid him an hourly rate below the minimum wage.

34.     Starting in or around March 2012, Defendants periodically designated two or three hours per week worked by Trujillo as non-tipped work and paid him $8.00 per hour.

35.     However, Defendants never paid Trujillo for all of the non-tipped work he performed.  For example, for the week of April 22, 2012, Defendants paid Trujillo $8.00 an hour for 2.85 hours and $5.00 an hour for 36.99 hours.  Trujillo, however, performed side work for more than 2.85 hours that week.

36.     During several workweeks, including the week of March 6, 2011, Trujillo worked over forty hours and was not paid one-and-one-half the minimum wage for the overtime he worked.

37.     In order to perform his duties for Defendants, Trujillo was required to purchase a bicycle.

5

38.     Trujillo's first bicycle, which was stolen during his employment for Defendants, cost him approximately $150.

39.     Trujillo paid approximately $200 for his second bicycle.

40.     Trujillo has spent approximately $50 a month to repair and to maintain the bicycle, including fixing the brakes.

41.     Trujillo is a covered employee within the meaning of the FLSA and the NYLL.

**Antonio Fuentes**

42.     Antonio Fuentes ("Fuentes") is an adult individual who is a resident of New York, NY.

43.     Fuentes was employed by Defendants as a delivery worker from approximately December 2009 to approximately September 2012 at the 1460 Broadway Chop't location in New York City.

44.     Defendants paid Fuentes an hourly rate of $4.75 per hour.

45.     Fuentes typically worked approximately five hours a day, five days a week.

46.     At all times, Defendants required Fuentes to spend three or more hours per day performing non-tipped work, such as cleaning and preparing food.

47.     Although Fuentes should have been paid as a non-tipped employee, Defendants paid him an hourly rate below the minimum wage.

48.     In order to perform his duties for Defendants, Fuentes was required to purchase an electric bicycle, which cost him approximately $900.

49.     Fuentes has spent approximately $50 a month to repair and to maintain the bicycle, including fixing the brakes.

50.     Fuentes is a covered employee within the meaning of the FLSA and the NYLL.

**Isaac Barreto**

51.   Isaac Barreto ("Barreto") is an adult individual who is a resident of Queens, NY.

52.   Barreto has been employed by Defendants as a delivery worker from approximately 2008 to the present at the 145 West 51st Street Chop't location in New York City.

53.   Defendants paid Barreto an hourly rate of $4.75 per hour at the beginning of his employment until September 2011.

54.   Defendants paid Barreto an hourly rate of $5.25 per hour from September 2011 to February 2012.

55.   Defendants paid Barreto an hourly rate of $5.50 per hour from February 2012 to January 2013.

56.   Beginning in January 2013, Defendants started paying Barreto an hourly rate of $9.50 per hour.

57.   Barreto typically worked between approximately 7 and 11.5 hours per day, five days a week.

58.   At all times, Defendants required Barreto to spend three or more hours per day performing non-tipped work, such as cleaning and preparing food.

59.   Although Barreto should have been paid as a non-tipped employee, Defendants paid him an hourly rate below the minimum wage.

60.   Defendants periodically designated two or three hours per week worked by Barreto as non-tipped work and paid him between $8.50 and $9.25 per hour.

61.   However, Defendants never paid Barreto for all of the non-tipped work he performed.  For example, for the week of April 22, 2012, Defendants paid Barreto $9.25 an hour

for 2.9 hours and $5.50 an hour for 23.48 hours.  Barreto, however, performed side work for more than 2.9 hours that week.

62.     When Barreto inquired of a Chop't manager why he was paid at a sub-minimum wage rate for the time he spent working in the kitchen, the manager responded that the payment reflected Defendants' rules.

63.     During several weeks, including the week of January 22, 2011, Barreto worked over forty hours and was not paid one-and-one-half the minimum wage for the overtime he worked.

64.     Sometimes, especially when it rained, Defendants sent Barreto home from work after fewer than three hours.

65.     Defendants never paid Barreto call-in pay.

66.     Barreto has worked more than 10 hours in a day several times, generally on Mondays.

67.     Defendants never paid Barreto spread of hours pay.

68.     Initially, Barreto made deliveries on foot.

69.     Thereafter, Defendants instructed Barreto to purchase a bicycle in order to make timely deliveries.

70.     Barreto's first bicycle, which was stolen during his employment for Defendants, cost him approximately $300.

71.     Barreto paid approximately $300 for his second bicycle, which was also stolen.

72.     Barreto then purchased a third bicycle for approximately $300.

73.     Barreto has spent approximately $50 to repair and to maintain the bicycle, including fixing the chain.

74. Barreto is a covered employee within the meaning of the FLSA and the NYLL.

**Defendants**

75. Chop't, McCabe, Shure, and Marsh (collectively, "Defendants") jointly employed Plaintiffs and similarly situated employees at all times relevant.

76. Each Defendant has had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

77. During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**Chop't Creative Salad Company LLC**

78. Chop't is a New York Corporation with its principal office located at 853 Broadway, Suite 606, New York, NY, 10003.

79. Upon information and belief, Chop't has an annual gross volume of sales in excess of $500,000.

80. Upon information and belief, McCabe, Shure, and Marsh are owners of Chop't.

81. Chop't is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

82. Chop't is the entity printed on Plaintiffs' paychecks.

**Colin McCabe**

83. McCabe is a resident of New York.

84. McCabe is an owner and operator at Chop't.

85. McCabe is an agent of Chop't.

9

86.     McCabe maintains control, oversight, and direction over the operation of Chop't's facilities, including its employment practices.

87.     At all relevant times, McCabe has had power over personnel decisions at Chop't.

88.     At all times relevant, McCabe had the power to hire and fire employees.

89.     At all times relevant, McCabe had power over compensation decisions at Chop't, including the power to set employee pay and the policies that give rise to Plaintiffs' claims.

90.     McCabe personally hires workers at Chop't restaurants.

91.     Upon information and belief, McCabe is actively involved in managing the day-to-day operations of Chop't and visits each site regularly.

92.     On the Chop't website, http://choptsalad.com/#founders_keepers, patrons are encouraged to email McCabe to find out at which Chop't location he will be on a given day.

93.     McCabe has power over payroll decisions.

94.     At all times relevant, McCabe has also had the power to stop any illegal pay practices that harmed Plaintiffs.

95.     McCabe is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Tony Shure**

96.     Shure is a resident of New York.

97.     Shure is an owner and operator at Chop't.

98.     Shure is an agent of Chop't.

99.     Shure maintains control, oversight, and direction over the operation of Chop't's facilities, including its employment practices.

100.    At all relevant times, Shure has had power over personnel decisions at Chop't.

101.    At all relevant times, Shure had the power to hire and fire employees.

102.    At all relevant times, Shure had power over compensation decisions at Chop't, including the power to set employee pay and the policies that give rise to Plaintiffs' claims.

103.    Shure personally hires workers at Chop't restaurants.

104.    In a video interview with *The Washington Post*,[3] Shure answered the question - "How do you hire the right people?" - by stating he looks at the person's "restaurant radar," if the person is detail-oriented, how loyal the person has been in past jobs, and what Shure's "gut" says about a person.

105.    Shure fired Ortiz for eating an ice cream in a Chop't restaurant while on duty but decided to give Ortiz a second chance and rehired him.

106.    Upon information and belief, Shure is actively involved in managing the day-to-day operations of Chop't and visits each site regularly.

107.    On the Chop't website, http://choptsalad.com/#founders_keepers, patrons are encouraged to email Shure to find out at which Chop't location he will be on a given day.

108.    Shure has power over payroll decisions.

109.    At all times relevant, Shure has also had the power to stop any illegal pay practices that harmed Plaintiffs.

110.    Shure is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

---

[3]    *Available at* http://www.washingtonpost.com/wp-dyn/content/video/2008/07/21/VI2008072101586.html, last visited April 15, 2013.

**Nicholas Marsh**

111.   Marsh is a resident of New York.

112.   Marsh is an owner and operator at Chop't.

113.   Marsh is an agent of Chop't.

114.   Marsh maintains control, oversight, and direction over the operation of Chop't's facilities, including its employment practices.

115.   At all relevant times, Marsh has had power over personnel decisions at Chop't.

116.   At all relevant times, Marsh had the power to hire and fire employees.

117.   At all relevant times, Marsh had power over compensation decisions at Chop't, including the power to set employee pay and the policies that give rise to Plaintiffs' claims.

118.   Upon information and belief, Marsh is actively involved in managing the day-to-day operations of Chop't and visits each site regularly.

119.   Marsh has power over payroll decisions.

120.   At all times relevant, Marsh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

121.   Marsh is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

122.   Plaintiffs bring the First, Second, and Third Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all delivery workers, employed by Defendants at the Chop't restaurants for the period of three years prior to the filing

of this Complaint and the date of final judgment in this matter and who elect to opt in to this

action ("FLSA Collective Members").

123.   At all relevant times, Plaintiffs and the other FLSA Collective Members are and

have been similarly situated, have had substantially similar job requirements and pay provisions,

and are and have been subject to Defendants' decision, policy, plan, and common programs,

practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay

Plaintiffs at the legally required minimum wage for all hours worked and one-and-one-half times

this rate for work in excess of forty hours per workweek, and requiring delivery workers to

engage in side work for more than twenty percent of their time at work.  The claims of Plaintiffs

stated herein are essentially the same as those of the other FLSA Collective Members.

124.   The First, Second, and Third Claims for Relief are properly brought under and

maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).  The FLSA Collective

Members are readily ascertainable.  For purpose of notice and other purposes related to this

action, their names and addresses are readily available from Defendants' records.  Notice can be

provided to the FLSA Collective Members via first class mail to the last address known to

Defendants.

### RULE 23 CLASS ALLEGATIONS – NEW YORK

125.   Plaintiffs bring the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and

Eleventh Claims for Relief pursuant to the Rule 23, on behalf of all delivery workers employed

by Defendants at Chop't between six years prior to the filing of this Complaint and the date of

final judgment in this matter ("Rule 23 Class").

126.   The members of the Rule 23 Class ("Rule 23 Class Members") are readily

ascertainable.  The number and identity of the Rule 23 Class Members are determinable from the

13

records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Rule 23.

127.    The proposed Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty Rule 23 Class Members.

128.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions. All the Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, failing to pay call-in pay, failing to pay off the clock work, failing to pay spread of hours pay, deducting equipment costs, failing to provide proper wage statements, and failing to provide proper wage and hour notices. Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members. Plaintiffs and other Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

129.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members. Plaintiffs are

represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

130.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

131.    Upon information and belief, Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

132.    There are questions of law and fact common to the Rule 23 Class which predominate over any questions affecting only individual Rule 23 Class Members, including:

a)    Whether Defendants violated NYLL Article, 6, §§ 190 *et seq.*, and Article 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, as alleged herein;

b)    Whether Defendants employed Plaintiffs and the Rule 23 Class Members within the meaning of the NYLL;

c)    Whether Defendants paid Plaintiffs and the Rule 23 Class Members at the proper minimum wage rate for all hours worked;

d)    At what common rate, or rates subject to common methods of calculation, Defendants were required to pay Plaintiffs and the Rule 23 Class Members for their work;

e)    Whether Defendants have a policy of requiring tipped employees to engage in side work for two hours or more and/or for more than twenty percent of their time at work in violation of the NYLL;

f)    Whether Defendants properly compensated Plaintiffs and the Rule 23 Class Members for hours worked in excess of forty per workweek;

g)    Whether Defendants have a policy of requiring employees to engage in off the clock work for which they are not compensated;

h)    Whether Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class Members;

i)    Whether Defendants properly compensated Plaintiffs and the Rule 23 Class Members their spread of hours pay;

j)      Whether Defendants properly compensated Plaintiffs and the Rule 23 Class
        Members their call-in pay; and

k)      Whether Defendants failed to provide notice and wage statements to Plaintiffs and
        the Rule 23 Class Members under the Wage Theft Protection Act.

## CLASSWIDE FACTUAL ALLEGATIONS

133.    Defendants committed the acts alleged in this Complaint knowingly,

intentionally, and willfully.  Defendants knew or should have known that they were violating the

law.

134.    Defendants knew that the violations described in this Complaint were unlawful.

135.    Plaintiffs, the FLSA Collective Members, and the Rule 23 Class Members

(collectively, "Class Members") are delivery workers.

136.    Plaintiffs and Class Members deliver orders of food from the restaurant premises

to locations off of the premises, such as customers' homes and places of business.

137.    Defendants unlawfully paid the Plaintiffs and Class Members an hourly rate

below the federal and state minimum wage for regular and overtime hours worked.

138.    Plaintiffs and Class Members worked in excess of forty hours per workweek

during some workweeks.

139.    Defendants were not entitled to take a tip credit under 29 U.S.C. § 203(m) or 12

N.Y.C.R.R. § 146-1.3 and 12 N.Y.C.R.R. § 146-2.9 because Defendants required Plaintiffs to

perform general preparation, dishwashing, maintenance, and/or other non-tipped work for two

hours or more and/or in excess of twenty percent of their time at work.

140.    Defendants are also not entitled to take a tip credit under the FLSA or the NYLL

because they failed to: (i) properly inform tipped employees of the requirements of law regarding

the minimum wage; (ii) properly inform tipped employees of their intention to avail themselves

of the tip credit allowance; (iii) maintain daily records of tip income received; and (iv) properly include the tip credit on the wage statements.

141.     Defendants also violated the FLSA and the NYLL by requiring the delivery workers to purchase the tools of their trade.

142.     Defendants required Plaintiffs to purchase and maintain bicycles in order to make deliveries and Plaintiffs had to pay for their own repairs and replacement bicycles.  Defendants never reimbursed Plaintiffs for these expenditures.

143.     Plaintiffs' and Class Members' workdays sometimes lasted longer than 10 hours.

144.     Defendants did not pay Plaintiffs or the Class Members spread of hours pay equal to one hour's pay at the minimum wage for each such workday.

145.     Defendants failed to pay Plaintiffs and Class Members call-in pay when Plaintiffs and Class Members were sent home after working fewer than three hours.

146.     Defendants failed to provide Plaintiffs and Class Members proper wage statements.

147.     Defendants failed to provide Plaintiffs and Class Members proper wage and hour notices at the date of hiring and annually thereafter pursuant to the requirements of NYLL § 195(1)(a).

148.     Defendants failed to provide Plaintiffs and Class Members with wage statements that list the employer's telephone number, correct tip credit allowance, and the proper overtime rate pursuant to NYLL § 195(3).

## FIRST CLAIM FOR RELIEF
### (FLSA, 29 U.S.C. §§ 201 *et seq.*, – Minimum Wage Claim
### Brought by Plaintiffs on Behalf of Themselves and
### the FLSA Collective Members)

149.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

150.    At all relevant times, each Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiffs and the FLSA Collective Members.

151.    Defendants were required to pay directly to Plaintiffs and the FLSA Collective Members the applicable New York State minimum wage rate for all hours worked.

152.    Defendants were not eligible to avail themselves of the tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m), and supporting federal regulations, including but not limited to 29 C.F.R. §§ 531.50 *et seq.*

153.    Defendants did not properly inform Plaintiffs and the FLSA Collective Members of 29 U.S.C. § 203(m).

154.    Defendant has engaged in a policy and/or practice of failing to pay Plaintiffs and the FLSA Collective Members the applicable minimum wage for all hours it suffered or permitted them to work.

155.    As a result of these minimum wage violations, Plaintiffs and the FLSA Collective Members have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

156.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint are unlawful.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

157.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CLAIM FOR RELIEF**
**(FLSA, 29 U.S.C. §§ 201 *et seq.* – Overtime Violations**
**Brought by Plaintiffs on Behalf of Themselves and**
**the FLSA Collective Members)**

158.     Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

159.     Plaintiffs and FLSA Collective Members worked in excess of forty (40) hours during some workweeks in the relevant period.

160.     Defendants willfully failed to pay Plaintiffs and the FLSA Collective Members at one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek.

161.     As a result of Defendants' unlawful acts, Plaintiffs and members of the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

162.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint are unlawful.   Defendants have not made a

20

good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

163.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## THIRD CLAIM FOR RELIEF
### (FLSA, 29 U.S.C. §§ 201 *et seq.* – Equipment Purchase and Maintenance Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Members)

164.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

165.    Defendants required Plaintiffs and the FLSA Collective Members to purchase and maintain bicycles required for Defendants' work.

166.    The cost of bicycle purchases and maintenance resulted in Plaintiffs and the FLSA Collective Members being paid less than the full minimum wage and overtime pay rate, in violation 29 U.S.C. §§ 201 *et. seq.* and 29 C.F.R. § 531.35.

## FOURTH CLAIM FOR RELIEF
### (NYLL, Article 19, §§ 650 *et seq.* – Minimum Wages Brought by Plaintiffs on Behalf of Themselves and the Rule 23 Class Members)

167.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

168.    At all times relevant, Plaintiffs and the Rule 23 Class Members have been employees and Defendants have been employers within the meaning of the NYLL §§ 190, 651(5), 652, and the supporting New York State Department of Labor Regulations.

169.    Defendants willfully failed to pay Plaintiffs and Rule 23 Class Members the minimum wages to which they are entitled under the NYLL.

170.     Defendants were not entitled to a "tip credit" under the NYLL.

### FIFTH CLAIM FOR RELIEF
**(NYLL, Article 19, §§ 650 *et seq.*, – Overtime Wages
Brought by Plaintiffs on Behalf of
Themselves and the Rule 23 Class Members)**

171.     Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

172.     Throughout the Class Period, Defendants willfully failed to pay Plaintiffs and the Rule 23 Class Members at the required overtime rates, one-and-one-half times the full minimum wage rate, for hours worked in excess of forty hours per workweek.

### SIXTH CLAIM FOR RELIEF
**(N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6
– New York Spread of Hours Provision
Brought by Plaintiffs on Behalf of
Themselves and Rule 23 Class Members)**

173.     Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

174.     At times, Plaintiffs and the Rule 23 Class Members worked more than 10 hours in a workday.

175.     Defendants willfully failed to compensate Plaintiffs and Rule 23 Class Members one hour's pay at the basic New York minimum hourly wage rate on days in which the length of their workday was more than 10 hours, as required by New York law.

### SEVENTH CLAIM FOR RELIEF
**(N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.5
– New York Call-in Pay Provision
Brought by Plaintiffs on Behalf of
Themselves and Rule 23 Class Members)**

176.     Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

177.    Defendants willfully failed to pay Plaintiffs and Rule 23 Class Members call-in pay, which is pay for at least three hours, on days in which Defendants sent Plaintiffs and Rule 23 Class Members home after they reported for work.

## EIGHTH CLAIM FOR RELIEF
### (NYLL, Article 6, §§ 190 *et seq.* – Illegal Deduction
### Brought by Plaintiffs on Behalf of
### Themselves and the Rule 23 Class Members)

178.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

179.    Defendants have willfully taken unlawful deductions by requiring Plaintiffs and the Rule 23 Class Members to purchase and maintain bicycles required for Defendants' work, in violation of NYLL § 193.

## NINTH CLAIM FOR RELIEF
### (N .Y. Comp. Code R. & Regs. tit. 12, § 146-2.7 –
### Equipment Purchase and Maintenance
### Brought by Plaintiffs on Behalf of
### Themselves and the Rule 23 Class Members)

180.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

181.    Defendants required Plaintiffs and the Rule 23 Class Members to purchase and to maintain bicycles required for Defendants' work.

182.    Defendants have willfully taken unlawful deductions by requiring Plaintiffs and the Rule 23 Class Members to purchase and to maintain bicycles required for Defendants' work, and the cost of bicycle purchase and maintenance resulted in Plaintiffs and the Rule 23 Class Members being paid less than the full minimum wage and overtime pay rate.

**TENTH CLAIM FOR RELIEF**
**(NYLL, Article 6, §§ 190 *et seq.* – Notice**
**Brought by Plaintiffs on Behalf of**
**Themselves and Rule 23 Class Members)**

183.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

184.    Defendants failed to furnish Plaintiffs and Rule 23 Class Members when they were first hired and by February of each year, in English and in the language identified by each employee as the primary language of such employee (for Plaintiffs, Spanish), with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

**ELEVENTH CLAIM FOR RELIEF**
**(NYLL, Article 6, §§ 190 *et seq.* – Wage Statement**
**Brought by Plaintiffs on Behalf of**
**Themselves and Rule 23 Class Members)**

185.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

186.    Defendants failed to furnish to Plaintiffs and Rule 23 Class Members with every payment of wages a wage statement that included: phone number of employer; correct tip credit allowance; correct minimum wage; and the proper overtime rate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Members and Rule 23 Class Members, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of this action as a class action pursuant to Rule 23;

C.    Designation of Plaintiffs as Representatives of the Class;

D.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

E.    Unpaid minimum wages and overtime;

F.    As a result of Defendants' willful violations of the NYLL § 195 and failure to provide notice when Plaintiffs and Rule 23 Class Members were hired and by February of each year, as pled in the Tenth Claim For Relief, for each Plaintiff and Rule 23 Class Member, $50.00 per workweek that the violation occurred, up to a maximum of $2,500, attorney's fees and costs and disbursements of the action, pursuant to NYLL § 198(1-b);

G.    As a result of Defendants' willful violations of the NYLL § 195 and failure to furnish the wage statement as required, as pled in the Eleventh Claim For Relief, for each Plaintiff and Rule 23 Class Member, $100.00 per workweek that the

violation occurred, up to a maximum of $2,500, attorney's fees and costs and

disbursements of the action, pursuant to NYLL § 198(1-d);

H.      Reimbursement for business expenses and unlawful deductions from wages;

I.      Liquidated damages under the FLSA and NYLL;

J.      Costs of the action incurred herein, including expert fees;

K.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, and

other applicable statutes;

L.      Declaratory and injunctive relief;

M.      Pre-Judgment and post-judgment interest, as provided by law; and

N.      Such other and further legal and equitable relief as this Court deems necessary,

just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to

which they have a right to jury trial.

Dated:  New York, New York
        April 16, 2013

Respectfully submitted,

By: _____
     Justin M. Swartz

Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson (*pro hac vice* motion
forthcoming)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile (212) 977-4005

C.K. Lee
Anne Seelig
Shin Hahn

LEE LITIGATION GROUP, PLLC
30 East 39th Street, Second Floor
New York, NY 10017
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

*Attorneys for Plaintiffs, FLSA Collective
Members, and the Class Members*